**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

CIVIL ACTION NO. 2:21-CV-078 (WOB-EBA)

CLARENCE K. WILLIS,                                       PLAINTIFF,

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

CAMCO CHEMICAL CO.,                                      DEFENDANT.


This is a lawsuit brought by Clarence Willis against Camco Chemical Company under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act (KRS Chapter 344) for race discrimination, a hostile work environment, and retaliation. Currently before the Court are Defendant's motion for summary judgment and Defendant's motion to strike the affidavit of Rob Dixon. (Doc. 29; Doc. 32).

The Court has carefully reviewed this matter and, being advised, now issues the following Memorandum Opinion and Order.

*Factual and Procedural Background*

**A. Plaintiff's Employment History with Defendant**

Plaintiff Clarence Willis ("Willis") was hired by Defendant Camco Chemical Company ("Camco") as a lab technician in 2007. (Doc. 30 at 2). In 2014, Willis failed a drug test, but completed a program and kept his position at Camco. (Doc. 29 at 3; Doc. 28, Willis Dep. at 28:3–24). The same year, Willis responded to a

1

female colleague who called him a "cock sucker" by telling her, "All you did was spread your legs and now you're family." (Doc. 29 at 3; Doc. 28, Willis Dep. at 42:5-20; Doc. 28-4). Both Willis and his female colleague received warnings on July 2, 2014, as a result of the incident. (Doc. 29 at 3; Doc. 28, Willis Dep. at 42:5-20; Doc. 28-4). Willis also called his Camco supervisor a "piece of shit" and had an interaction with another colleague in which Willis was "the loudest [he'd] ever been" and called that colleague an "idiot." (Doc. 29 at 3; Doc. 28, Willis Dep. at 46:10-47:13, 133:4-20).

On May 24, 2017, Willis received a final written warning for "unsatisfactory conduct" including "unprofessional and offensive behavior and insubordination" such as "confrontational and verbally abusive" interactions with colleagues and supervisors. (Doc. 28-6 at 1). That warning stated that it served "as notice that any further misconduct will be viewed as unwillingness to comply with reasonable expectations and would result in disciplinary measures up to and including [Willis's] dismissal." (*Id.*). Willis received a salary increase on May 26, 2017.[1] (Doc. 31-16).

---

[1] Although Willis contends that he was offered a promotion on May 26, 2017, (*see* Doc. 31-1, Willis Aff. ¶ 5(h)), the email he references for evidence of that purported offer only discusses a salary increase. (Doc. 31-16).

On April 27, 2018, a laboratory manager at Camco noted that Willis's "attitude and communication amongst other employees [had] significantly improved" and that the "current atmosphere in the lab is one that promotes [teamwork] and progress which is much in part due to [Willis]." (Doc. 30 at 5; Doc. 31-17). In 2019, a female colleague accused Willis of harassment, but resigned before a full investigation could take place, so no action was taken against Willis as a result of that accusation. (Doc. 29 at 3-4; Doc. 28, Willis Dep. at 107:11-108:14). Willis admitted that he compared the employee who had accused him of harassment to "roast beef." (Doc. 29 at 3 n.1; Doc. 28, Willis Dep. at 126:19-127:13).

Willis also received written performance evaluations during his employment with Camco. (Doc. 30 at 4). He received a perfect score of 100 points for his "Attitude," which also included evaluations of "Professionalism" and willingness to be a "Team Player," in October 2008, (Doc. 31-8 at 1), November 2009, (Doc. 31-9 at 1), December 2011, (Doc. 31-11 at 1), and January 2014, (Doc. 31-13 at 1), while he received 86 points out of a possible 100 in November 2010, (Doc. 31-10 at 1), and 80 points in April 2017, (Doc. 31-15 at 1). In December 2012, Willis's evaluation noted that he "gets along with everyone." (Doc. 31-12 at 1). In February 2015, Willis's evaluation reflected that he was a "stabilizing, mature influence for the younger team members," but

also noted that "his communication techniques sometimes increase strife rather than improve the situation." (Doc. 31-14 at 1).

### B. Another Employee's Threat Against Plaintiff

On February 26, 2020, Willis spoke to a Deputy Sheriff, who informed him that another Camco employee, Lisa Durban ("Durban"),[2] told her therapist that "she had a gun and wanted to shoot [Willis] in the face." (Doc. 1 ¶ 15). On the same day, Willis told Camco management that he rarely spoke to Durban because of her "constant racial remarks," including referring to Willis and other African American people with racial slurs, which created a racially hostile work environment. (*Id.* ¶¶ 17-18).

With the consent of Camco, Willis took paid time off on the following day. (*Id.* ¶ 20). Camco immediately suspended and terminated Durban. (Doc. 29 at 4; Doc. 29-1, Hothem Decl. ¶ 9). Camco also hired security to patrol its premises. (Doc. 29-1, Hothem Decl. ¶ 9). Willis never saw or heard from Durban after February 26, 2020. (Doc. 29 at 4; Doc. 28, Willis Dep. at 82:6-11).

### C. Defendant's Investigation of Plaintiff

On or about February 20, 2020, shortly before Willis became aware of Durban's threat against him, Camco alleges that it

---

[2] Durban's name is also spelled as "Durbin" in the record.

4

received complaints that Willis was bullying and harassing other employees, including by using crude, threatening, and inappropriate language. (Doc. 29 at 4; Doc. 29-1, Hothem Decl. ¶ 5). Camco ordered Willis not to return to work after his paid time off on February 27, 2020, which had been granted due to Durban's threat. (Doc. 1 ¶ 22). Camco called Willis in for a meeting on March 2, 2020, during which it advised him of the allegations against him, gave him a final warning, and suspended him from work.[3] (*Id.* ¶¶ 23, 25).

Camco utilized ADPTotalSource ("ADP"), a third-party professional employer organization, to investigate Willis's conduct. (Doc. 29 at 4; Doc. 29-1, Hothem Decl. ¶ 6). Beginning on March 10, 2020, ADP conducted interviews with other Camco employees who stated that Willis made inappropriate comments about female coworkers, including discussing their bodies, calling them "bitch," and saying that he "would rock [their] world." (Doc. 29 at 4; Doc. 29-1 at 8). Camco employees also reported that Willis would make sexual comments, including that, if he felt a female coworker was in a bad mood, they needed to "get fucked" or "get some dick." (Doc. 29 at 4; Doc. 29-1 at 9).

---

[3] Willis contends that, during discovery in this case, he found a "Final Warning" in his Camco personnel file dated February 28, 2020. (Doc. 31-1, Willis Aff. ¶ 11). However, this February 28 "Final Warning" is not present in the record. (*See* Doc. 34 at 10 n.8).

Willis also purportedly talked frequently about committing violence, including by stating that he would "[beat] the fuck out of people." (Doc. 29 at 4; Doc. 29-1 at 9). However, other witnesses, including supervisors, indicated that no one had expressed previous concerns about Willis to them. (Doc. 29-1 at 8). Camco's Lab Manager reported during the investigation that Willis had a "pattern" of inappropriate behavior, including being "disrespectful" and "insubordinate" towards him on multiple occasions and as evidenced by reported concerns from other employees over a two-year period preceding the investigation. (*Id.* at 7–8). The investigation's conclusion on March 26, 2020, was that ADP had found "evidence to support policy violations of the Harassment, Sexual Harassment, and Workplace Conduct Policies."[4] (*Id.* at 11).

On March 30, 2020, Camco terminated Willis's employment. (Doc. 29 at 4). On June 21, 2021, Willis filled this case, alleging discrimination based on race, a hostile work environment, and retaliatory workplace discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act (KRS Chapter 344). (*See* Doc. 1).

---

[4] Although ADP indicated that Willis did not respond to their requests to interview him, (Doc. 29-1 at 11), Willis argues that his attorney did respond to ADP within the allotted time and has provided a copy of the letter he purportedly sent to ADP. (Doc. 31-1, Willis Aff. ¶ 26; Doc. 31-6 at 1–4).

### *Analysis*

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether there exists a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is inappropriate if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.*

In this case, Plaintiff brings claims under both Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act (KRS Chapter 344) for race discrimination, a hostile work environment, and retaliation. (*See* Doc. 1). "Because [KRS] Chapter 344 mirrors Title VII of the Civil Rights Act of 1964 . . . ., we use the federal standards for evaluating race discrimination claims." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) (citing *Ky. Comm'n on Hum. Rts. v. Ky.*, 586 S.W.2d 270, 271 (Ky. Ct. App. 1979)). Therefore, this Court will apply the federal standards under Title VII to all claims in this case.

## A. Race Discrimination

"Title VII makes unlawful an employer's decision to 'discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Smith*, 220 F.3d at 758 (quoting 42 U.S.C. § 2000(e)-2(a)(1)). In the absence of direct evidence of discrimination,[5] courts apply the *McDonnell Douglas* burden-shifting framework to discrimination claims. *Brewer v. New Era, Inc.*, 564 F. App'x 834, 840 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)). Under this framework, the burden is first placed on the plaintiff to submit evidence from which a reasonable jury could conclude that they established a prima facie case of discrimination. *Id.*

The burden then shifts to the employer to proffer a legitimate nondiscriminatory reason for its employment decision. *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 405 (6th Cir. 2001)). If the employer provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the

---

[5] In his Opposition to the Defendant's Motion for Summary Judgment, Plaintiff does not argue that he has established any direct evidence of discrimination. (*See* Doc. 30 at 12–17).

reason offered by the employer was a pretext for unlawful discrimination. *Id.*

### i.   Prima Facie Case

To establish a prima facie case of race discrimination, the plaintiff must show that he: (1) was a member of a protected class; (2) was discharged; (3) was qualified for his position; and (4) either was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside his protected class. *McNeil v. Sonoco Prods. Co.*, 519 F. App'x 382, 383 (6th Cir. 2013) (citing *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

Camco does not dispute that Willis is African American, which makes him a member of a protected class, that Willis was terminated, or that Willis was qualified for his position at Camco. (*See* Doc. 29 at 6). Similarly, Willis does not argue that he was replaced by someone outside his protected class. (*See* Doc. 30 at 12–17). Therefore, the only issue in dispute as to Plaintiff's prima facie case is whether he has shown that he was treated less favorably than a similarly situated individual outside his protected class.

It is undisputed that several Camco employees accused Willis of sexual and other harassment. (*See* Doc. 29-1 at 11). At Willis's

deposition, he stated that the only Camco employee he was aware of who was accused of harassment and/or threatening someone who was not terminated was Dave Pruitt ("Pruitt"), who is white. (Doc. 28, Willis Dep. at 168:21–170:13). However, Willis does not know whether Camco management was aware of any complaints against Pruitt and, thus, Willis cannot show either that Pruitt was similarly situated to Willis or that Pruitt was treated more favorably by Camco because Camco may not have known about Pruitt's alleged harassment. (*See id.* at 170:4–6).

Further, the alleged harassment perpetuated by Pruitt occurred before Willis started working at Camco and the only information Willis has about the incident came from a conversation Willis had with Pruitt. (*Id.* at 169:9–170:3). Because Willis admittedly lacks personal knowledge of the accusations against Pruitt and Pruitt's statements to Willis constitute inadmissible hearsay, this Court may not consider Camco's conduct with respect to Pruitt in the context of a motion for summary judgment. *See Flones v. Beaumont Health Sys.*, 567 F. App'x 399, 405 (6th Cir. 2014) ("[I]t is well established that a court may not consider inadmissible hearsay when deciding a summary-judgment motion.").

In his Opposition to the Defendant's Motion for Summary Judgment, Willis also discusses two other white Camco employees who allegedly made sexual comments at work. (Doc. 30 at 4). One

employee, Jenna, purportedly referred to Willis as a "cock sucker."
(*Id.*). However, Willis admits that both he and Jenna were written
up for the inappropriate remarks that they made during that
incident. (Doc. 28, Willis Dep. at 42:5-20). Another employee,
Kris Gordan "(Gordan"), allegedly told sexually explicit stories
at work, including about how she "lost her virginity" and "her
many sexual partners." (Doc. 30 at 4). However, there is no
evidence in the record to indicate nor has Willis alleged that he
reported Gordan's conduct to Camco or that Camco was otherwise
aware of Gordan's statements, so Willis cannot show that Gordan
was similarly situated to him or treated more favorably by Camco.
(*See* Doc. 34 at 3).

Further, Lisa Durban, a white employee who made threatening
and harassing remarks toward Willis, was immediately suspended and
terminated and Willis never saw or heard from her after her conduct
was reported to Camco. (*Id.*; Doc. 28, Willis Dep. at 82:6-11; Doc.
29-1, Hothem Decl. ¶ 9). Based on the evidence before this Court,
in incidents where Camco has been shown to have knowledge of
harassing or threatening remarks made by employees, it has taken
similar action without regard to the race of the offending
employee, as both Jenna and Durban were treated similarly to
Willis. Willis has thus failed to show that any Camco employee who
was similarly situated to him, but outside his protected class,

11

was treated more favorably. Therefore, Willis has not established a prima facie case of race discrimination.

### ii. Pretext

Although Willis's race discrimination claim fails as a matter of law because he cannot establish a prima facie case, even if there were sufficient evidence for a reasonable jury to conclude that Willis was treated less favorably than a similarly situated individual outside his protected class, Camco has put forth a legitimate nondiscriminatory reason for Willis's termination, namely that Willis engaged in inappropriate and harassing behavior at work. (*See* Doc. 34 at 4). This shifts the burden back to Willis to prove that Camco's proffered reason was a pretext for unlawful discrimination. *See Arendale*, 519 F.3d at 603.

Pretext can be shown if the employer's proffered reasons for an adverse employment action: "'(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.'" *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018) (quoting *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431 (6th Cir. 2014)). Notably, Willis admitted at his deposition that he had no reason to dispute that the reason given by Camco for his termination was the actual reason he was terminated, which weighs heavily against his present assertion that there is a genuine issue of material fact as to

12

whether Camco's reason was pretextual. (Doc. 28, Willis Dep. at 144:24–145:2).

Willis correctly asserts that the "honest belief rule" does not apply to entitle Camco to summary judgment on the issue of pretext in this case because he has not asserted that Camco's proffered reason is mistaken, foolish, trivial, or baseless. *See, e.g.*, *Hamilton v. Gen. Elec. Co.*, No. 3:06-CV-659, 2011 WL 1085862, at *6 (W.D. Ky. Mar. 21, 2011) ("The [honest belief] rule only applies, however, where a plaintiff demonstrates pretext 'by showing that the reason given by the employer is ultimately found to be mistaken, foolish, trivial, or baseless.'") (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007)).

However, Willis must still "articulate some cognizable explanation of how the evidence [he] has put forth establishes pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Further, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) (internal quotation omitted).

Camco asserts that its President and CEO, Adrian Hothem ("Hothem"), was the sole decisionmaker regarding Willis's termination. (Doc. 29-1, Hothem Decl. ¶¶ 1,9). While Willis agrees

13

that Hothem never did or said anything that would indicate a racial bias, (Doc. 28, Willis Dep. at 44:8-20), Willis argues that Teresa Harmeyer ("Harmeyer") influenced the termination decision based on her presence at the meeting during which the allegations against him were discussed. (Doc. 30 at 12-13). Willis also alleges that Harmeyer, who was a Camco supervisor, repeatedly referred to him as a "scary black man" and asked Camco employees to make statements accusing him of creating a hostile work environment.[6] (*Id.* at 6; Doc. 28, Willis Dep. at 70:11-71:8, 163:14-18).

The Supreme Court has held that "if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable . . . ." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (footnotes omitted). "However, 'if the employer's [independent] investigation results in an adverse action for reasons unrelated to the supervisor's original biased action . . . then the employer will not be liable.'" *Voltz v. Erie Cnty.*, 617 F. App'x 417, 423-24 (6th Cir. 2015) (quoting *Staub*, 562 U.S. at 421).

---

[6] Camco argues that Harmeyer requested statements but did not ask employees to accuse Willis of anything. (Doc. 34 at 5 n.3). However, this is a disputed issue of fact.

Here, even if a reasonable jury could conclude that Harmeyer had discriminatory animus toward Willis, intended to cause his termination, and influenced the termination decision, it is undisputed that Camco used a third party, ADP, to conduct an independent investigation, which concluded that Willis had violated Camco's Harassment, Sexual Harassment, and Workplace Conduct Policies. (Doc. 34 at 6; Doc. 29-1 at 11). Thus, under *Voltz* and *Staub*, Camco cannot be held liable for any alleged discriminatory animus held or conduct perpetuated by Harmeyer because an independent investigation resulted in Willis's termination for reasons unrelated to any racial bias against him.

As Willis asserts, failure to follow company policy, when taken together with other evidence, can create evidence sufficient to preclude summary judgment on the issue of pretext. *See Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 260-61 (6th Cir. 2002). Here, Willis argues that Camco did not follow its own progressive disciplinary policy because he was not given a written warning while employed by Camco and the "Final Warning" given to him during his suspension was dated prior to the ADP investigation. (Doc. 30 at 14, 16; Doc. 31-1, Willis Aff. ¶ 8). However, the policy Willis attached to his affidavit provides that "Major Violations," including harassment of other employees, "may result in a Written Warning *or Termination* for the first offense." (Doc.31-4 at 1) (emphasis added).

15

Although Willis also alleges that Camco has provided "shifting explanations" for his termination, (Doc. 30 at 14), the initial reason given by Camco for Willis's termination on March 30, 2020, is the same reason it currently argues motivated its termination decision: "violation of our Harassment, Sexual Harassment and Workplace Conduct Policies." (Doc. 28-18 at 1).

Although Willis discusses several positive performance reviews he received during his employment at Camco, (Doc. 30 at 3-4), evidence of past performance cannot overcome the evidence of policy violations for which Camco asserts Willis was terminated in 2020. *See Terry v. U.S. Enrichment Corp.*, No. 2:09-CV-624, 2011 WL 1325004, at *4 (S.D. Ohio Apr. 5, 2011) (holding that evidence of positive performance reviews "would not address whether Defendants' articulated basis for the termination of Plaintiff's employment was mere pretext for unlawful discrimination."). Willis does not dispute that ADP, a third-party organization, conducted an independent investigation in which it elicited several incidents of Willis's inappropriate conduct from at least four interviewees and ultimately found that Willis had violated Camco's Harassment, Sexual Harassment, and Workplace Conduct Policies. (Doc. 29-1 at 6-11).

Willis has not shown, beyond mere conjecture, that Camco's proffered reason for his termination was pretextual. Therefore,

Willis's race discrimination claim fails as a matter of law because he can establish neither a prima facie case nor that Camco's proffered reason for his termination was a pretext for unlawful discrimination.

### B. Hostile Work Environment

To survive a motion for summary judgment on a hostile work environment claim, a plaintiff must establish: (1) he was a member of a protected class; (2) he was subjected to unwelcome harassment based on race or national origin; (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there is a basis for liability on the part of the employer. *Owhor v. St. John Health-Providence Hosp.*, 503 F. App'x 307, 312 (6th Cir. 2012) (citing *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009)). "The third element requires a plaintiff to show that the workplace was permeated with harassment that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Here, Camco does not dispute that Willis is African American, which satisfies the first element of his claim. (*See* Doc. 29 at 7-9).

Willis argues that three Camco employees, including Durban, used the word "nigger" to refer to African Americans, and that Harmeyer referred to Willis as a "scary black man." (Doc. 30 at 6-7; Doc. 28, Willis Dep. at 70:11-71:8, 75:7-78:4). However, it is undisputed that Camco immediately suspended Durban on the day that Willis reported her conduct to Camco management and terminated her thereafter.[7] (Doc. 28, Willis Dep. at 82:6-11; Doc. 29-1, Hothem Decl. ¶ 9). Because Camco undisputedly took immediate action to remove Durban from her position, it cannot be liable for her alleged conduct and Willis cannot establish the fourth prong of the hostile work environment inquiry. *See Wierengo v. Akal Sec., Inc.*, 580 F. App'x 364, 371 (6th Cir. 2014) (finding that under the standard for employer liability for harassment by a coworker, the plaintiff must establish that the employer knew or should have known of the harassment yet failed to take prompt and appropriate corrective action).

Although the record indicates that Harmeyer was a Camco Technical Director and that Willis reported indirectly to her, (*see* Doc. 29-1 at 10), an individual is only a "supervisor" in the

---

[7] Although Willis argues that Camco terminated Durban only because of her threats of violence and not in response to her racial remarks, (*see* Doc. 30 at 6-7), this argument is unavailing because Willis admits that he did not work with Durban again after reporting her conduct, (*see* Doc. 28, Willis Dep. at 82:6-11), and Willis cannot do more than speculate as to which specific instances of Durban's conduct actually motivated her termination.

context of a hostile work environment claim if that individual had the power to take "tangible employment action" against the plaintiff. *See Wierengo*, 580 F. App'x at 371 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013)). Here, Willis alleges that Harmeyer "influenced" and provided input in the decision to terminate him but agrees that the ultimate decision was made by someone else. (*See* Doc. 30 at 13–14). Because there is no allegation that Harmeyer could take tangible employment action against Willis, her comments must also be analyzed under the framework for coworker statements. *See Wierengo*, 580 F. App'x at 371.

Willis has not alleged that he or anyone else reported Harmeyer's comments to Camco management or Human Resources. (Doc. 28, Willis Dep. at 156:17–157:1). Because Willis has failed to show that Camco knew or should have known of Harmeyer's alleged harassment, Camco cannot be liable for her conduct as required under the fourth prong of the inquiry. *See Wierengo*, 580 F. App'x at 371.

On the contrary, Willis alleges that he did report the racial slurs used by two other employees, Tim Smith and Mike Smith, to a Camco supervisor at the beginning of his employment. (Doc. 28, Willis Dep. at 77:1–79:22). Willis notes that he heard Tim Smith use a racial slur once and Mike Smith use a racial slur "four or

five times" during their daily interactions. (*Id.* at 77:19–78:4).
However, the sporadic use of racial slurs does not rise to the
level of conduct that was "sufficiently severe or pervasive" such
that Willis's conditions of employment were altered and the working
environment was abusive, as required under the third prong of a
hostile work environment claim. *See Owhor*, 503 F. App'x at 312.

In *Smith*, the Sixth Circuit held that, where employees and
supervisors used racial slurs, circulated a racially
discriminatory and lewd cartoon, and referred to an African
American employee as a "gorilla," there was no conduct that was
"'severe or pervasive enough' to create an objectively hostile
work environment." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 757,
760 (6th Cir. 2000). Similarly, a court in this District held that
the use of racial slurs and an employee's comment that he would
"whoop [the plaintiff's] black ass . . . and hang [him] upside
down" and "have the Ku Klux Klan string up" an African American
employee did not establish a hostile work environment. *Scott v. G
& J Pepsi-Cola Bottlers, Inc.*, No. 5:08-98-KKC, 2009 WL 10701593,
at *3–5 (E.D. Ky. May 19, 2009).

Even if there were a basis for employer liability as to all
the conduct alleged in this case, the comments made by Camco
employees were less egregious than the comments and actions in
*Smith* and *Scott* and, thus, the Court finds that Willis's hostile

20

work environment claim fails as a matter of law because he cannot establish the third prong of the inquiry with respect to any of the conduct alleged.

### C. Retaliation

Just as with a race discrimination claim, in the absence of direct evidence,[8] courts apply the *McDonnell Douglas* burden-shifting framework to retaliation claims. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Under this framework, the burden is first placed on the plaintiff to submit evidence from which a reasonable jury could conclude that they established a prima facie case of retaliation. *Id.* The burden then shifts to the employer to proffer a legitimate nondiscriminatory reason for its employment decision. *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)). If the employer provides such a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the reason offered by the employer was a pretext for unlawful discrimination. *Id.*

### i.   Prima Facie Case

To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in protected activity; (2) his

---

[8] In his Opposition to the Defendant's Motion for Summary Judgment, Plaintiff does not argue that he has established any direct evidence of retaliation. (*See* Doc. 30 at 12-17).

employer knew of the exercise of the protected right; (3) an adverse employment action was taken against him; and (4) there was a causal connection between the protected activity and the adverse employment action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008) (citing *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000)). Camco does not dispute that it took an adverse employment action against Willis by terminating him, which satisfies the third prong of Willis's prima facie case. (Doc. 29 at 10). However, Camco does argue that Willis cannot establish that he engaged in a protected activity, that Camco's decisionmaker knew of Willis's protected activity, or that there was a causal connection between Willis's protected activity and his termination. (*Id.*).

Camco's argument that Willis cannot establish that he engaged in protected activity is unavailing. Under Title VII, it is "unlawful . . . for an employer to discriminate against any of [its] employees . . . because he has opposed any practice made . . . unlawful . . . by this [title.]" 42 U.S.C. § 200e-3(a). "Examples of opposition activity protected under Title VII include 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices . . . .'" *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 344–45 (6th Cir. 2021) (quoting *Niswander*, 529 F.3d at 721). Therefore, when Willis complained to Camco management on February 26, 2020, that Durban's

use of racial slurs created an allegedly hostile work environment, (Doc. 31-1, Willis Aff. ¶ 11), he engaged in protected activity for the purposes of Title VII.

Further, whether Hothem, the person who made the decision to terminate Willis, knew about Willis's complaints is disputed. Hothem stated that he "was not aware of any complaint made by Willis during his employment about any alleged race discrimination, hostile work environment, harassment, or retaliation." (Doc. 29-1, Hothem Decl. ¶ 10). However, as stated in an internal Camco email, Hothem was present at the March 2 meeting during which it was discussed that Willis "is a black man" and "was a victim in all of this." (Doc. 28-8 at 1). A jury might reasonably infer that Hothem was thus aware of Willis's complaints regarding harassment and retaliation due to his race, despite Camco's contention otherwise, making summary judgment improper on that issue.

As to the fourth and final prong of the prima facie case, Camco argues that, because it began its investigation into Willis's conduct on February 20, 2020, six days before Willis complained about Durban's use of racial slurs, there can be no causal connection between Willis's complaints and his termination. (Doc. 34 at 11). However, Camco has not provided any record evidence to support this assertion. On the contrary, Camco does not dispute

that Willis was permitted to work until he requested paid time off on February 26, 2020, following Durban's threat. (Doc. 29-1, Hothem Decl. ¶ 9). Further, Camco stated in an internal email that "separate allegations . . . had been made by other employees in the time *since*" Willis's complaint, (Doc. 28-8 at 1) (emphasis added), and ADP indicated that it did not begin its investigation into Willis until March 6, 2020. (Doc. 29-1 at 6). Thus, a jury might reasonably infer that Camco's investigation did not actually begin until after Willis's complaint.

The Sixth Circuit has held that "an inference of causation may arise *solely* from the closeness in time between the point at which an employer learns of an employee's protected activity and the point at which it takes an adverse action against that employee." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664 (6th Cir. 2020) (emphasis added) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). The Sixth Circuit has thus denied summary judgment where an employer took adverse action against a plaintiff

within a few months after learning of their protected activity. *Kirilenko-Ison*, 974 F.3d at 664-65 (collecting cases).

Where, as here, Plaintiff's employer suspended him within a few days of his complaint and terminated him one month later, there is sufficient evidence of a causal connection to preclude summary judgment on that issue. Because Willis has provided evidence sufficient to establish a prima facie case of retaliation, the burden shifts to Camco to proffer a legitimate nondiscriminatory reason for Willis's termination. *See Abbott*, 348 F.3d at 542.

### ii.   Pretext

Camco has met its burden to put forth a legitimate nondiscriminatory reason for Willis's termination by providing evidence that Willis engaged in inappropriate and harassing behavior at work. (*See* Doc. 34 at 4). This shifts the burden back to Willis to show that Camco's reason was a pretext for unlawful discrimination. *See Abbott*, 348 F.3d at 542. Willis must demonstrate pretext by showing that the proffered reason: (1) has no basis in fact; (2) did not actually motivate Camco's conduct; or (3) was insufficient to warrant Camco's conduct. *Mickey*, 516 F.3d at 526 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Because Willis stated during his deposition that no one had done anything that he thought was retaliatory toward him and that

25

he had no reason to dispute that the reason given by Camco for his termination was the actual reason he was terminated, his present assertion that there is a genuine issue of material fact as to whether Camco's reason was pretextual is difficult to support. (Doc. 28, Willis Dep. at 144:24–145:2, 171:7–14). As analyzed in conjunction with Willis's race discrimination claim, he has failed to show disparate treatment or that any discriminatory animus which may have been held by Harmeyer influenced the termination decision in light of the independent investigation by ADP. Further, Willis has not provided evidence that Camco deviated from its own policies or provided "shifting explanations" for his termination, and evidence of Willis's past performance does not negate the policy violations for which he was purportedly terminated.

The only issue Willis raises with respect to his retaliation claim that was not also raised regarding his race discrimination claim is whether the temporal proximity between his complaint and his termination supports an inference of pretext. (Doc. 30 at 15–16). Although temporal proximity may support a prima facie case of retaliation, *see Mickey*, 516 F.3d at 525, the Sixth Circuit has not held that temporal proximity is sufficient to establish pretext where the employer has provided a legitimate nondiscriminatory reason for an employee's termination. The only Sixth Circuit case which Willis cites for the proposition that temporal proximity can establish pretext, *Taylor v. Geithner*, did not even discuss the

issue of pretext and found only that the plaintiff had established a prima facie case of retaliation. *See* 703 F.3d 328, 340 (6th Cir. 2013).

Moreover, the Sixth Circuit has found that, even where temporal proximity was sufficient to show a causal connection for the purposes of a prima facie retaliation claim, summary judgment was appropriate when the defendant provided a nondiscriminatory reason for its adverse action. *See, e.g.*, *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 401, 403-05 (6th Cir. 2014) (finding that the defendant was entitled to summary judgment where there were independent reasons for terminating the plaintiff despite temporal proximity of three months between protected activity and the termination); *Herrera v. Churchill McGee, LLC*, 545 F. App'x 499, 502 (6th Cir. 2013) (finding that the defendant was entitled to summary judgment where the plaintiff did not dispute that his conduct was sufficient to motivate the termination despite temporal proximity of one month between protected activity and the termination). Here, Willis does not dispute that policy violations, such as those found by ADP, were sufficient to support his termination. (*See* Doc. 29-1 at 7).

Because the temporal proximity between Willis's complaints and his termination is insufficient to show that Willis's policy violations did not motivate Camco's decision and there is no other

27

evidence from which a reasonable jury could infer that Camco's proffered reason for the termination was pretextual, the Court finds that Willis's retaliation claim fails as a matter of law.

### D. Affidavit of Rob Dixon

Camco also argues that the Affidavit of Rob Dixon, (Doc. 31-18), and its attachment (Doc. 31-19), which Willis filed with his Memorandum in Opposition to the Defendant's Motion for Summary Judgment, should be stricken in its entirety because Willis failed to disclose Dixon as a witness, the Affidavit is not based on personal knowledge, and it contains inadmissible hearsay. (Doc. 32 at 1). However, the Court need not decide this motion. The Affidavit contains information that Dixon, a private investigator retained by Willis's counsel, learned from interviewing some of Willis's former colleagues at Camco. (Doc. 31-18, Dixon Aff. ¶¶ 4-8). Dixon provides that four Camco employees told him that they "had a good working relationship" with Willis, never heard or saw Willis violate company policy, and felt that Willis was a "great chemist." (*Id.*).

However, Dixon failed to interview any of the four witnesses who told ADP investigators that they had personally observed Willis violate company policy.[9] (*Id.*). Just as Willis's positive

---

[9] During the ADP investigation, Joe Tomlinson, Cierra Alexander, Chad Johnston, and Matt Mullen indicated that they had heard Willis being "disrespectful and" "insubordinate" or making "inappropriate," "sexual,"

performance reviews from the past cannot negate current allegations, the fact that some of Willis's colleagues did not perceive him violate company policy does not negate the violations that others claimed they were subjected to. Further, of the four people Dixon did interview, three were also interviewed during the ADP investigation and the content of their statements did not differ significantly.[10] (*Id.* ¶¶ 4–7; Doc. 29-1 at 7–10).

The fourth person interviewed by Dixon indicated that she "did not have any contact with [Willis.]" (Doc. 31-18, Dixon Aff. ¶ 8). Therefore, even if Dixon's Affidavit could be considered at the summary judgment stage, it does not provide relevant information beyond what is already contained in the record from ADP's investigation, and it would not allow an inference that there is no factual basis for Camco's belief that Willis violated company policy in light of the other evidence in the record. Therefore, this Court will deny Camco's motion to strike the Affidavit of Rob Dixon as moot.

### *Conclusion*

Therefore, for the reasons stated above, **IT IS ORDERED** that:

---

and "derogatory" comments. (Doc. 29-1 at 7–10). Dixon did not purport to interview any of these individuals. (Doc. 31-18, Dixon Aff. ¶¶ 4–8).

[10] Joe Post, Lauren Keagle, and Joey Lyman were interviewed by both ADP and Dixon, and each indicated during both interviews that they had not personally seen Willis violate Camco policy. (Doc. 29-1 at 7–10; Doc. 31-18, Dixon Aff. ¶¶ 4–7).

(1) Defendant's Motion for Summary Judgment on all Plaintiff's claims (Doc. 29) be, and is hereby, **GRANTED;**

(2) Defendant's Motion to Strike the Affidavit of Rob Dixon (Doc. 32) be, and is hereby, **DENIED AS MOOT;**

(3) A separate judgment shall enter concurrently herewith.

This 11th day of October 2022.



Signed By:

_**William O. Bertelsman**_  WOB

**United States District Judge**